FILED
IN CLERKS OFFICE
2019 JAN 17 AM 9: 05
U.S. DISTRICT COURT
DISTRICT OF MASS

## Pro Se Plaintiff Michael Hootstein's Legal Argument
## Presented at U.S. District Court on January 17, 2019

I sufficiently state a claim for declaratory and injunctive relief under *42 U.S.C. § 1983*, and respectfully ask that this Honorable Court: 1) deny the Defendant Amherst School Committee's Motion to Dismiss; and 2) issue an emergency preliminary injunction against the Defendant School Committee as requested.

**Defendant Amherst School Committee's Motion to Dismiss should be denied at the get-go for failure to comply with Local Rule 7.1. (a)(2):**

> **"No motion shall be filed unless counsels certify that they have conferred and have attempted in good faith to resolve or narrow the issue."**

A review of Defendant's December 22, 2017 Motion to Dismiss (Docket Document 12) and Memorandum of Law in Support of its Motion to Dismiss (Docket Document 13) proves Defendant's attorneys failed to **"certify that they have conferred and have attempted in good faith to resolve or narrow the issue"**.

I, Michael Hootstein, further certify that Defendant's attorneys never "attempted in good faith to resolve or narrow the issue" with me in violation of **Local Rule 7.1. (a)(2).**

As explained by another judge of this Court in Martinez v. Hubbard, 172 F. Supp. 3d 378 (D. Mass. 2016),

> "Local Rule 7.1 certification is not an empty exercise. Local Rule 7.1 serves a meaningful dual role: it fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources. Failure on the part of a litigant to comply with the rule not only affects the other parties, but it impedes the court's process as well."
> Id. at 385 (footnote omitted)

Defendant Amherst School Committees Motion to Dismiss should be **DENIED WITH PREJUDICE** for its attorneys' repeated failure to comply with Local Rule 7.1, and also on the merits of Amherst's frivolous argument because it impedes the court's process for over a year

1

now. Defendant School Committee cannot point to any language or statute in the Safe Drinking Water Act that supports Defendant's motion that the Safe Drinking Water Act precludes my well-pled *Section 1983* claims.

The Court has a rare opportunity today, to pursue a just and civil child-protective remedy by issuing an emergency preliminary injunction Order against Amherst Schools to prevent continued foreseeable, imminent and irreparable lead-poisoning harm to my grandson and me, as well as to 2,500 similarly situated Amherst school-children and parents, and by extension, to 1/2 million similarly situated Massachusetts schoolchildren and parents! An Order would compel the Committee to provide all Amherst students and their parents equal access to the same safe bottled water which the Committee provides to the Superintendent and his staff.

Such an issuance is also warranted on an emergency basis today, to prevent a substantial ongoing risk of serious bodily harm to Amherst schoolchildren by Defendant Amherst School Superintendent Michael Morris, in his individual capacity, whose reckless lead-poisoning conduct satisfies all the elements of a crime under *G. L. c. 265, § 13L, the Massachusetts Child Endangerment Statute*:

> "Whoever wantonly or recklessly engages in conduct that creates a substantial risk of serious bodily injury…to a child or wantonly or recklessly fails to take reasonable steps to alleviate such risk where there is a duty to act… For the purposes of this section, such wanton or reckless behavior occurs when a person is aware of and consciously disregards a substantial and unjustifiable risk that his acts, or omissions where there is a duty to act, would result in serious bodily injury…to a child. The risk must be of such nature and degree that disregard of the risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

The requested emergency relief should be granted for the reasons stated in my Motion for Preliminary Injunction: **(i)** I am likely to succeed on the merits of my claims; **(ii)** my grandson and I, as well as over 2,500 Amherst schoolchildren and their parents, will continue to suffer irreparable harm if the injunction is withheld; **(iii)** the balance of harms weighs heavily in

favor of emergency relief here; and **(iv)** issuing the injunction is overwhelmingly in the public interest; withholding the injunction is not in the public interest because it would condone the deliberate lead-poisoning of 2,500 Amherst schoolchildren in opposition to the compelling state interest in the protection of children.

Undisputable scientific evidenc e *(See attached* **Plaintiff's Hearing Exhibit 1 -** *"Lead In Amherst, MA School Drinking Water - Cost Effective Solutions Exist"*, authored by the Plaintiff Hydrogeologist, retired Franklin County Health Agent Glen Ayers and acclaimed Flint water scientist, Dr. Marc Edwards) proves lead-contaminated Amherst school water is unfit for consumption by schoolchildren who attend Fort River, Wildwood and Crocker Farm Elementary Schools, and Amherst Regional Middle, High and South East Campus Schools.  **(See also** *attached* **Plaintiff's Hearing Exhibit 2 - All Amherst Schools Lead Testing Data & Pie Charts, and Plaintiff's Hearing Exhibit 3 - Fort River Lead Testing Data & Pie Charts)**

**Superintendent Morris <u>admits</u> Amherst Middle School drinking water is unfit for human consumption** as evidenced by **his decision** to purchase bottled water - not exceeding the safe FDA 5 ppb lead limit - for himself and his staff, but not for Amherst schoolchildren who are similarly (like Dr. Morris and his administrative staff) exposed to high levels of toxic lead in Amherst schools each and every school day.

Defendant Amherst's compilation of Amherst Regional High School lead data (*See* Defendant's Memorandum of Law in Support of its Motion to Dismiss, Exhibit 2 lead-testing data) deceptively conceals every one of the **7** "notably alarming tests" equal to or more than 15 times higher than the 1 ppb American Academy of Pediatrics safe lead limit. *(See attached* **Plaintiff's Hearing Exhibit 4 - Amherst Regional High School Lead Testing Data & Pie Charts)**

Contrary to Defendant's deceptively false reporting, tests performed at the High School on October 20, 2016 show dangerous high concentrations of lead in school water: in the Health Room - **100, 18, 14 ppb lead**; Boy's (Men's) locker room - **88 & 49 ppb lead**; Food Prep - **25 ppb lead**; and Room 193 - **15 ppb lead**.

Both Defendant's and Plaintiff's compilation of school water lead data (*See attached* **Plaintiff's Hearing Exhibit 5 - Amherst Regional Middle School Lead Data & Pie Charts**) show dangerous high concentrations of lead in school water on November 15, 2016, in the Boy's locker room - **98 ppb lead**; Girl's locker room - **130 ppb lead**; Family Center - **120 & 35 ppb lead**; Health Room - **58 & 31 ppb lead**; Food Prep - **19 ppb lead**; other faucets/bubblers - **20, 29, 79, 62, 17, 130, 62, 50 and 42 ppb lead.**

The Superintendent's personal safety decision here to purchase bottled water for himself and his staff, but not for his more at risk (of lead-poisoning) students, and his misrepresentations of foreseeable irreparable risks to Amherst schoolchildren, satisfies all the elements of a crime under the *Child Endangerment Statute G. L. c. 265, § 13L*.

Please, **the called for Order is further warranted on an emergency basis today**, to prevent a substantial ongoing risk of serious bodily harm to my grandson and all Amherst schoolchildren. Our children are mostly taught about the privileges and duties of good citizenship by our own examples of good citizenship. But sometimes, like in the instant matter, we can learn by theirs. Please read the attached November, 2016 school news article, **"Lead tests reveal tainted water at all Amherst schools"** written by an Amherst High School student, and consider his wise commonsense conclusion:

> "The least the school can do is to have clean water…We pay so much in taxes. It really is the least they could do. **It's crazy that seven year olds are being exposed to unhealthy water."** (*See attached* **Plaintiff's Hearing Exhibit 6 -** Lead tests reveal tainted water at all Amherst schools, by Willy Wright, The Graphic, November 1, 2016)

I herein provide additional evidence (*See attached* **Plaintiff's Hearing Exhibit 7 - Superintendant Morris' Email Communications**) in support of my allegations against Superintendent Morris that warrants the Court's issuing of the requested preliminary injunction, mainly that the Superintendent "wantonly or recklessly engages in conduct that creates a substantial risk of serious bodily injury...to a child or wantonly or recklessly fails to take reasonable steps to alleviate such risk where there is a duty to act".

As early as September 15, 2016, Superintendent Morris emailed his team: "**too many water outlets with high levels of lead to cover [students but not him and his staff] with bottled water**" (*See attached* **Plaintiff's Hearing Exhibit 7 Email**) in response to an earlier September 15, 2016 email from UMass water scientist John Tobiason:

> "**40 [ppb lead]** > AL ['Action Level' for corrosion control only], about **60 [ppb lead]** for Fort River... **Ouch.** The flush samples show Pb levels that suggest to me the need to consider response actions that are systemic in contrast to fixture by fixture, a subject we can discuss." (*See attached* **Plaintiff's Hearing Exhibit 7 Email**)

On September 16, 2016, Superintendent Morris disregarded a substantial and unjustifiable risk of serious bodily injury to Fort River k-2 students, as memorialized in email by the k-2 students' teacher: "**Also there is a water fountain on the little kids playground that they drink out of all the time, grades k-2... Has that been tested? Still uncomfortable giving little kids water at my fountain til I see results on a second flush...I had a student with lead poisoning in CA. Its effects are real.**" (*See attached* **Plaintiff's Hearing Exhibit 7**)

On September 21, 2016, Superintendent Morris wrote, "My preference is to flush...the two faucets in the nurses office(unless a viable alternative is available for the use of the nurse) and shut down the others that came up high...The Wildwood nurses office had same situation (unless I am missing something) and the flushing protocol is working fine there." (*See attached* **Plaintiff's Hearing Exhibit 7**) Thus creating even more dangers for students in his care and

protection, Superintendent Morris's "30 second flushing" of school drinking water has been shown in studies to cause **"a small but significant increase in water lead."** (*See attached* **Plaintiff's Hearing Exhibit 8 -** *"Effectiveness of Prevailing Flush Guidelines to Prevent Exposure to Lead in Tap Water,* International Journal of Environmental Research and Public Health, by Katner, Pieper, Brown Lin, Parks, Wang Hu, Masters, Mielke and Marc Edwards, July, 2018)

Further proving Amherst School's illicit "limiting the school's financial exposure" scheme, on October 6, 2016, the Director of Amherst School Facilities and Transportation, Ron Bohonowicz emailed his boss, the Superintendent: "That is why we did not proceed with all of…[Wildwood's and Fort River's lead remediation efforts]. **We are limiting the [school's] financial exposure."** (*See attached* **Plaintiff's Hearing Exhibit 9 Email**)